```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**DALLAS BOOKENBERGER**                                   **CIVIL ACTION**

**VERSUS**                                                **NO. 18-6373**

**TERREBONNE PARISH, ET. AL.**                            **SECTION: "B"(3)**

<u>**ORDER & REASONS**</u>

Before the Court are defendants Terrebonne Parish ("TP"), Houma Police Department ("HPD"), Dana Coleman, Cory Johnson, and Terry Boquet's (collectively "defendants") motion to dismiss (Rec. Doc. 15) with supplemental exhibits (Rec. Doc. 18) and plaintiff Dallas Bookenberger's opposition memorandum (Rec. Doc. 16). For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss is **GRANTED IN PART**, and we decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**FACTS AND PROCEDURAL HISTORY**

This is a civil rights case. Plaintiff was a commissioned officer of the HPD. *See* Rec. Doc. 1 at 1. He began his employment with the HPD in 2016 after working several years as an officer with Terrebonne Sheriff's Office. *See id.* at 3. Defendants are TP, a governmental entity; the HPD, where plaintiff was employed; Dana Coleman, the Chief Police of the HPD, in her official and individual capacities; Cory Johnson, a sergeant of the HPD, in his official and individual capacities; and Terry Boquet, a sergeant of the HPD, in his official capacity only. *See id.* at 1-2.

Plaintiff alleges First Amendment retaliation; whistleblower protection; Fourteenth Amendment substantive and procedural due process; intentional infliction of emotional distress ("IIED"); civil conspiracy; deprivation of rights and privileges under § 1983; entitlement to reasonable attorneys' fees under § 1988; and negligent hiring, commissioning, training, supervision, and retention. *See id*. at 13-22.

On May 26, 2018, at or around 10:32 p.m., defendant Johnson ordered dispatch to request that plaintiff respond to a call in Terrebonne Parish. *See id*. at 4. Specifically, plaintiff was dispatched to respond to a white pickup truck driving in a reckless manner. *See id*. Plaintiff arrived to the area to "intercept the suspect vehicle." *Id*. at 5. While parked in his department-issued vehicle, he observed traffic but did not encounter any vehicles matching the suspect vehicle. *See id*.

At or around 10:38 p.m., plaintiff advised dispatch that he did not see any vehicles matching the suspect vehicle and was available for reassignment. *See id*. "Immediately after advising dispatch he was available for reassignment, [defendant] Johnson requested [p]laintiff's location via radio and advised him to remain in position." Rec. Doc. 15-1 at 3. Once defendant Johnson arrived to the area, a verbal argument ensued between defendant Johnson and plaintiff. *See id*. Both were very angry. *See id*. Plaintiff surmises that the call was a set-up, unsanctioned investigation by defendant

Johnson to poorly reflect on his service record. *See* Rec. Doc 1 at 6. Defendants claim that plaintiff was merely subjected to an "integrity check" for his alleged failure to respond to calls.[1] *See* Rec. Doc. 15-1 at 1.

On May 29, 2019, plaintiff filed a fourteen-page formal grievance alleging that defendant Johnson attempted to entrap him and violated several criminal statutes and HPD policies in doing so. *See id*. at 3. Subsequently, plaintiff was suspended and placed on administrative leave pending an investigation. *See id*. at 4. Plaintiff believes that he was relieved of his officer privileges in a humiliating fashion. *See* Rec. Doc. 1 at 8-9. Plaintiff alleges that defendant Coleman advised him that he stopped reading his grievance after the second page. *See id*. at 9.

On June 22, 2019, plaintiff returned to the HPD with counsel to meet with defendant Boquet for additional questioning. *See id*. Defendant Boquet asked about the handling of the reckless driving call, the incident with defendant Johnson, and plaintiff's work on federal block grants. *See id*. at 10-11. Plaintiff alleges that the interrogation was conducted contrary to state law because defendant Boquet refused to inform him and his counsel of the scope of the

---

[1] According to defendants, "[i]integrity checks are an accepted procedure that police departments rely upon to determine if their officers are properly performing their duties." Rec. Doc. 15-1 at 2; *see also United States v. Battiste*, 343 Fed. Appx. 962, 963 (5th Cir. 2009) ("The NOPD was contacted by a source who informed them that Battiste was stealing money from arrestees. Investigators from PIB conducted an "integrity check" of Battiste, employing a decoy and a covert vehicle.").

investigation. *See id*. at 10. Defendant Boquet mentioned alleged discrepancies in plaintiff's work on federal grants to intimidate him and his counsel. *See id*. at 12.

At plaintiff's filing of his complaint, he was on suspended and on administrative. *See id*. Defendant Johnson was not. *See id*. at 10. Plaintiff alleges that defendant Johnson was assigned to his work. *See id*. at 13. Plaintiff states in his opposition that he was ordered to be reinstated following administrative hearings to be held on the incident and surrounding issues. *See* Rec. Doc. 16 at 1.

On October 9, 2018, defendants filed a motion to dismiss. *See* Rec. Doc. 15. On October 16, 2018, plaintiff filed an opposition. *See* Rec. Doc. 16. On April 22, 2019, defendants added several exhibits to their motion to dismiss. *See* Rec. Doc. Nos. 18, 19.

Based on the supplemental exhibits submitted by defendants, plaintiff was subsequently terminated. See Rec. Doc. 18. Plaintiff appealed his termination to the Houma Municipal Fire and Police Civil Service Board ("the Civil Board"). *See id*. The Civil Board ruled in plaintiff's favor, overturning his termination. *See id*. at 1. Defendants appealed the Civil Board's decision to the 32nd Judicial District Court, Parish of Terrebonne, State of Louisiana. *See id*. at 2. The 32nd Judicial District Court reversed the Civil Board's decision, reinstating the appointing authority's decision to terminate plaintiff. *See* Rec. Doc. 18-2.

4

**LAW AND ANALYSIS**

    **A. Motion to Dismiss Standard**

    Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

    When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiff must

"nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Rule 12(b)(6) is designed to test the pleadings. Defendants filed supplemental exhibits outside of the pleadings. Therefore, pursuant to Rule 12(d), the court will convert this motion to dismiss as one for summary judgment. *See Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 610 (E.D. La. 1998)("When matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion is converted into a motion for summary judgment.").

### B. Section 1983

Section 1983 allows for a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. *See Whittington v. Maxwell*, 455 Fed. Appx. 450, 456 (5th Cir. 2011). To establish liability through Section 1983, three elements must be established: (1) deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *See Victoria W v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Section 1983 "contemplates recovery of compensatory damages, as well as equitable relief, against a local government official for the harm that he inflicts because of his constitutional violations, subject to any personal immunities of the officer." *Lee v. Morial*, 2000 U.S. Dist. LEXIS 8307, at *4 (E.D. La. 2000). Such damages are also available against a local government when its officer has

carried out official policy. *See id*. citing to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**C. Official Capacity Claims**

Defendants Coleman, Johnson, and Boquet argue that there are no official capacity claims against them because plaintiff lists TP and HPD as defendants[2], making his claims against them redundant. *See* Rec. Doc. 15-1 at 11. Defendants are correct in arguing that suit against a municipal employee in his official capacity is the same as a suit against the municipality itself. *See also Lee*, 2000 U.S. Dist. LEXIS 8307, at *4 ("A suit against a government official in his official capacity is treated as a suit against the entity."). Official capacity claims against defendants Coleman, Johnson, and Boquet in their official capacity are treated as claims against TP and HPD. Therefore, plaintiff's claims against defendants Johnson, Coleman, and Boquet in their official capacities are dismissed. *See St. Martin v. Jones*, 2008 U.S. Dist. LEXIS 70896, at *12 (E.D. La. 2008)(stating that the Fifth Circuit has expressed that identical claims against individual public officials and the entities by which they are employed are barred by virtue of subjecting the defendant-entity to redundant liability).

---

[2] Defendants appear to refer to as defendants Terrebonne Parish ("TP") and Houma Police Department ("HPD") collectively as Terrebonne Parish Consolidated Government ("TPCG"). The Court will refer to the two separately.

**D. Municipal Liability**

Defendants TP and HPD argue that municipality liability is non-existent here because plaintiff fails to adequately allege that TP and HPD, in their official capacity, violated his constitutional rights. *See* Rec. Doc. 15-1 at 6, 8. Plaintiff makes allegations against TP and HPD employees but fails to assert plausible claims directly associated with policies, regulations, and decisions officially adopted and promulgated by TP and HPD. *See id*. at 8. Furthermore, plaintiff makes no allegations that defendants Coleman, Johnson, Boquet were acting pursuant to an official municipal policy and as official municipal policymakers. *See id*. at 10.

To establish municipal liability under Section 1983, a plaintiff must show proof of three elements: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *See Maurer v. Town of Independence*, 2015 U.S. Dist. LEXIS 25035, at *18 (E.D. La. 2015); *see also Brown v. Bolin*, 500 Fed. Appx. 309, 316 (5th Cir. 2012).

The Fifth Circuit has held that an official policy is either (a) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority; or (b) a persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated

policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy. *See Mays v. Bd. of Comm'rs Port*, 2015 U.S. Dist. LEXIS 33596, at *26 (E.D. La. 2015).

Here, plaintiff fails to allege an official policy or custom, much less one that was the moving force of his alleged constitutional rights violations. Instead of alleging that defendants caused his alleged injuries through their deliberate conduct in accordance with a particular policy or custom of TP or HPD, plaintiff alleges the opposite: that defendants violated his constitutional rights through their violation of state laws and HPD rules. *See id*. at *25 ("The plaintiff must [] demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.").

Specifcally, plaintiff alleges in a conclusory fashion, that "[d]efendants [] acted on and used the authority vested in them by and entrusted to them by the State of Louisiana and Terrebonne Parish to . . . deprive [him] of rights, privileges, and immunities protected by the United States Constitution". Rec. Doc. 1 at 20; *see also Mays*, 2015 U.S. Dist. LEXIS 33596, at *27 ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). The only time that plaintiff comes close to alleging a custom is when he states that assigning a case number to a call is a "customary and routine practice and procedure for the

[HPD]." Rec. Doc. 1 at 4. Plaintiff never goes on to link this alleged custom to his alleged injures. *See Mays*, 2015 U.S. Dist. LEXIS 333596, at *26 ("[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

Plaintiff offers similar allegations in his response memorandum. He states that defendants characterized his complaints as "accepted procedure" but then states that "no [] policy exists" and he has sufficiently pled specific facts as to municipal liability in his complaint by showing that "defendants' actions were wrongful, improper under the law, and violated his recognized rights under the Constitution." Rec. Doc. 16 at 8-10. Plaintiff misses the mark again as the rule here requires him to prove that a policy exists and defendants' following of that policy caused him injury. *See Mays*, 2015 U.S. Dist. LEXIS 333596, at *25.

Plaintiff alleges that the only way to "uncover" defendants' alleged accepted procedure (i.e., integrity checks) is to follow through with full discovery. *See* Rec. Doc. 16 at 10. Even when viewing this allegation in the light most favorable to the plaintiff, plaintiff's factual allegations support only one incident involving defendants' alleged accepted procedure. That one incident is not sufficient to show the existence of a custom or policy. *See Fraire v. Arlington*, 957 F.2d 1268, 1278 (E.D. La. 1992)("Allegations of an

10

isolated incident are not sufficient to show the existence of a custom or policy."). Therefore, plaintiff's claims against defendant TP and HPD are dismissed. *See Mays*, 2015 U.S. Dist. LEXIS 33596, at *25 ("To maintain a § 1983 claim against a municipality, a plaintiff must show that officials acted in accordance with an official policy or custom.").[3]

**E. Individual Capacity Claims**

Defendants Coleman and Johnson argue that, as public officials, they are entitled to qualified immunity. *See* Rec. Doc. 15-1 at 17.

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law[.]" *See Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "Qualified immunity balances two important interests[:] the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Whittington*, 455 Fed. Appx. at 456 citing to *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Lockett v. New Orleans City*, 639 F. Supp. 2d 710, 732 (E.D. La. 2009) (stating that qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[3] Beyond stating that defendants acted on and used the authority vested in and entrusted to them by the State of Louisiana and Terrebonne Parish, plaintiff does not come close to sufficiently alleging that defendants Johnson, Coleman, or Boquet were the final policymakers of TP or HPD. *See generally Green v. Edward-Sheriff*, 2011 U.S. Dist. LEXIS 148413, at *21 (E.D. La. 2011)(finding the Tangipahoa Parish Sheriff to be a finial policymaker).

reasonable person would have known). Courts will not reject an assertion of qualified immunity unless existing precedent places the constitutional question beyond debate. *See Whitley*, 726 F.3d at 638 citing to *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011).

If a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Whittington*, 455 Fed. Appx. at 456. Specifically, the plaintiff has the burden of demonstrating (1) a claim that the defendant committed a constitutional violation under current law and (2) that the defendant's action were objectively unreasonable in light of the law that was clearly established at the time of the complained of actions. *See Lockett*, 639 F. Supp. 2d at 732; *see also Whittington*, 455 Fed. Appx. at 456 (stating that the qualified immunity defense requires two points of analysis). The touchstone of this two-point test is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law. *See Lee*, 2000 U.S. Dist. LEXIS 8307, at *12.

The first issue to turn to is whether plaintiff has alleged a violation of a constitutional right. *See Maurer*, 2015 U.S. Dist. LEXIS 25035, at *19 (stating that the first step in the qualified immunity analysis is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right). Plaintiff alleges a claim of First Amendment retaliation and

Fourteenth Amendment substantive and procedural due. *See* Rec. Doc. 1 at 13, 16.

### 1. First Amendment Retaliation Claim

Defendants argue that plaintiff has no first amendment claims because he does not allege sufficient facts. *See* Rec. Doc. 15-1 at 14. Specifically, plaintiff makes no allegations that any defendant saw or read his grievance prior to suspending him or that he spoke out publicly about the allegations in his complaint. *See id.* As a paramilitary organization, HPD has more latitude in its discipline decisions than ordinary government organizations. *See id.* at 15.

To succeed on a claim for First Amendment freedom of speech retaliation, a plaintiff must show (1) he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; (3) his interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the speech precipitated the adverse employment action. *See Dumas v. St. Tammany Parish Fire Dist. No. 3*, 2017 U.S. Dist. LEXIS 72672, at *13 (E.D. La. 2017). Plaintiff contends that he has sufficiently alleged a first amendment retaliation claim as his complaint includes multiple charges against defendants. *See* Rec. Doc. 16 at 7, 10-11.

Plaintiff has failed to allege sufficient facts as to an essential element of first amendment retaliation: that he spoke as a citizen on a matter of public concern. *See Garcia v. City of Harlingen*, 2009 U.S. Dist. LEXIS 4135, at *19 (S.D. Tex.

13

2009)(dismissing plaintiff's first amendment retaliation claim for failing to sufficiently allege an essential element).

Plaintiff alleges in his complaint that his written allegations concerning defendant Johnson's violations of law and departmental policies are matters of grave public concern because they outline potential Fourth Amendment violations that could have arose during the alleged integrity check had there been a person operating a white pickup truck. *See* Rec. Doc. 1 at 14. Plaintiff alleges that the creation of the falsified public record resulting from the alleged integrity check placed the plaintiff and general public at risk of great harm. *See id*. Plaintiff believes that "his raising [of this] issue of defendants' violations of law promotes and does not inhibit the proper and efficient operation of the defendants. . .." Rec. Doc. 16 at 11. Plaintiff's allegations concerning defendants' conduct relates to conduct of employees rather than in protest of concerned citizens. *See Sinegar v. Jefferson Parish Sch. Bd.*, 2003 U.S. Dist. LEXIS 14310, at *12 (E.D. La. 2003). Therefore, plaintiff has not alleged that he spoke as a citizen on a matter of public concern.

Plaintiff alleges in his memorandum that after he "spoke on [the] matter of undisputedly great public concern," he was "ruthlessly investigated to no end." Rec. Doc. 16 at 7. Plaintiff alleges that on the same day he submitted his written allegations, he was suspended in retaliation for submitting such. *See* Rec. Doc.

1 at 14. The Fifth Circuit has held that certain actions, while they have the effect of chilling the exercise of free speech, are not actionable adverse employment actions. *See Dumas*, 2017 U.S. Dist. LEXIS 72672, at *12; *see also Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998). Specifcally, this Circuit has held that discharges, demotions, and refusals to hire or promote are actionable. False accusations, verbal reprimands, and investigations are non-actionable. *See Garcia,* 2009 U.S. Dist. LEXIS 4135, at *18. Accordingly, plaintiff being investigated by defendant Boquet after the transpiring of these events does not constitute an actionable adverse employment action. *See Dumas*, 2017 U.S. Dist. LEXIS 72672, at *12 (E.D. La. 2017). Furthermore, in his memorandum, plaintiff notes that since plaintiff's suspension and filing of his complaint, he "has since been ordered to be reinstate by [] defendants following administrative hearings eventually held on the matter." Rec. Doc. 16 at 1 fn. 1. Plaintiff's temporary suspension with pay is not the type of objective adverse employment action that establishes constitutional injury. *See Sinegar*, 2003 U.S. Dist. LEXIS 14310, at *11; *see also Brown*, 106 F. Supp. 3d at 789 ("A temporary suspension with pay has not been found to be an adverse employment action—if followed by reinstatement and no loss of benefits."). Defendants subsequently submitted additional exhibits, showing that the 32nd Judicial District Court "reverse[d] [the Civil Service Board's] decisions, reinstating the [appointing authority's] decisions to

15

terminate Bookenberger." *See* Rec. Doc. 18 at 2. Therefore, it appears that plaintiff's termination could constitute an actionable adverse employment action. But, nevertheless, plaintiff has failed to allege that he spoke as a citizen on a matter of public concern.

Because he has failed to allege sufficient facts as to an essential element of First Amendment retaliation, plaintiff's First Amendment claims against defendants fail. *See Garcia*, 2009 U.S. Dist. LEXIS 4135, at *19.

### 2. Substantive and Procedural Due Process Claim

Defendants argue that plaintiff's due process claims fail because he fails to establish a property interest as he was placed on administrative leave. *See* Rec. Doc. 15-1 at 16. Furthermore, plaintiff has the right to use civil service statutes and has done so by filing an appeal with the Civil Service Board to address his complaints. *See id.* at 16-17.

Due process rights, whether substantive or procedural, are implicated only if a state actor deprived an individual of a protected property interest. *See Devall v. Hammond Mun. Fire & Police Civ. Serv. Bd.*, 2014 U.S. Dist. LEXIS 166998, at *40 (E.D. La. 2014); *see also* U.S. Const. amend. XIV, §1 (stating that no state shall deprive any person of property, without due process of law). Defendants are correct in stating that plaintiff was not deprived of a property interest when he was placed on administrative leave. *See Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 495 (5th Cir.

2011)(stating that it is well established in the Fifth Circuit that placement on paid administrative leave does not constitute deprivation of a property interest).

However, in addition to allegation concerning his property interest in employment, plaintiff alleges the he was deprived of due process rights because defendant Coleman did not investigate his grievance complaint within 14 days as required by state law and defendants did not identify or limit the scope of the investigation of him as required by state law. *See* Rec. Doc. 16 at 12-13. Plaintiff alleges that by failing to disclose the nature of the investigation against plaintiff and denying records requests, defendants rendered it impossible for plaintiff's counsel to provide effective assistance of counsel, in further violation of plaintiff's right to due process. *See* Rec. Doc. 1 at 14. This Circuit has rejected claimed property interest in investigations. *See Davis*, 448 Fed. Appx. at 495 (explaining that Texas district courts have consistently held that procedural regulations or an agency's failure to such procedures does not give rise to a property interest).

Plaintiff alleges in a conclusory fashion that "[d]efendants then acted on and used the authority vested in them by and entrusted to them by the State of Louisiana and Parish of Terrebonne, under the color of law, . . . and deprived the [p]laintiff of rights, privileges and immunities protected by the United States Constitution." Rec. Doc. 1 at 20. This allegation is insufficient.

17

*See Snow Ingredients, Inc.*, 833 F.3d at 520 (stating that elements supported by conclusory statements cannot establish plausibility).

Plaintiff is correct in stating that deprivation of a property interest is not an element of a § 1983 claim. However, defendants have asserted qualified immunity as to plaintiff's § 1983 claims. Therefore, to avoid dismissal, plaintiff must show that he has sufficiently alleged deprivation of a property interest to show defendants committed a constitutional violation under current law. *See Lockett*, 639 F. Supp. 2d at 732.

Plaintiff has not sufficiently alleged a property interest. It appears that plaintiff concedes that he has not sufficiently alleged a property interest by stating in his response memorandum that "[t]he deprivation of [] property interest shall be detailed in a forthcoming amended complaint . . . ." Rec. Doc. 16 at 8. Plaintiff has not sought leave to file an amended complaint or supplemental memorandum concerning his property interest allegations.[4]

Furthermore, plaintiff exercised his rights as a civil service employee by filing an appeal with the Civil Board to address his complaints and subsequent termination. *See* Rec. Doc. 18 at 1. The Civil Board ruled in his favor, reversing the appointing authority's decision to terminate him. *See id*. at 2. However, the 32nd Judicial District Court reversed the Civil Board's decision, reinstating the

---

[4] Specifically, plaintiff has not sought leave to allege a property interest in his employment as a municipal officer since being terminated. *See, e.g.*, *Winn v. New Orleans City*, 919 F. Supp. 2d 743, 754 (E.D. La. 2013).

appointed authority's decision to terminate Bookenberger. *See id*. This is sufficient process. *See Winn v. New Orleans City*, 919 F. Supp. 2d 743, 755 (E.D. La. 2013) (denying plaintiff's due process claim where "[p]laintiff received post-termination process when he appealed [the appointed authority's] decision to the New Orleans Civil Service Commission. A hearing was [conducted], sworn testimony was taken, and evidence was submitted by both sides.").

Plaintiff's substantive and procedural due process claims are dismissed.

**F. Civil Conspiracy**

Plaintiff's failure to state a claim for violation of his constitutional rights dooms his conspiracy claim. Therefore, his civil conspiracy claim is dismissed. *See Winn*, 919 F. Supp. 2d at 756 ("[To] state a claim for conspiracy under § 1983, it remains necessary to prove an actual deprivation of a constitutional right . . ..").[5]

**G. 42 U.S.C. § 1988**

42 U.S.C. § 1988 states, in relevant part, that in any action enforcing a provision of 42 U.S.C. § 1983 the court, in its discretion, may allow the prevailing party reasonable attorneys' fees. Having dismissed plaintiff's federal claims, attorneys fees do not appear appropriate at this time. Accordingly, plaintiff's claim

---

[5] Plaintiff relies on La. C.C. art. 2324 for his civil conspiracy claim. *See* Rec. Doc. 1 at 19. But, nevertheless appears to allege conspiracy under § 1983.

for attorneys' fees is dismissed. *See Toga Soc'y, Inc. v. Lee*, 323 F. Supp. 2d 779, 797 (E.D. La. 2004).

**H. State Law Claims**

Having dismissed plaintiff's federal claims, all that is left is plaintiff's state law claims of whistleblower protection, IIED, and negligent hiring, commissioning, training, supervisions, and retention. *See* Rec. Doc. 1 at 15, 18, 27. Pursuant to 28 U.S.C. § 1367, this Court is empowered to hear plaintiff's state law claims through the exercise of supplemental jurisdiction. While supplemental jurisdiction may continue after the federal claims upon which jurisdiction is based have been dismissed, district courts have broad discretion in deciding whether to retain jurisdiction. *See Vanderwall v. Peck*, 2004 U.S. Dist. LEXIS 7619, at *15 (E.D. La. 2004). 28 U.S.C. § 1367(c)(3) allows district courts to decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. *See id*. Accordingly, we decline to exercise supplemental jurisdiction over plaintiff's three state law claims, and they are dismissed without prejudice. *See id*. at *16.

New Orleans, Louisiana this 16th day of August, 2019

SENIOR UNITED STATES DISTRICT JUDGE